U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
AUG 18 2026
AT ____ O'CLOCK ____
John M. Domurad, Clerk - Plattsburgh

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

**UNITED STATES OF AMERICA**
**v.**
**Raul MORENO HERNANDEZ,**

**Defendant.**

Case No. 8:26-PO-66 (GLF)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of August 16, 2026, in the county of Franklin in the Northern District of New York the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 8 U.S.C. § 1325(a)(1) | Entry Without Inspection. |

This criminal complaint is based on these facts:
See attached affidavit.

☒ Continued on the attached sheet.

Amanda L. Harvey 3:00pm 8/17/26
*Complainant's signature*
U.S. Border Patrol Agent Amanda L. Harvey
*Printed name and title*

Attested to by the Affiant in accordance with Rule 4.1 of the Federal Rues of Criminal Procedure.

Date: Aug. 18, 2026

[signature]
*Judge's signature*

City and State: Plattsburgh, New York

Hon. Gary L. Favro, U.S. Magistrate Judge
*Printed name and title*

*United States of America v* **Raul MORENO HERNANDEZ**

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Amanda L. Harvey, hereby depose and state under penalty of perjury:

1. I am a Border Patrol Agent (BPA) with the United States Department of Homeland Security (DHS), Bureau of Customs and Border Protection (CBP), United States Border Patrol (USBP) assigned to the Burke (BKB) Border Patrol Station. I have been a Border Patrol Agent since April 2011. My primary duty is to assist in the prevention of illicit trafficking of people and contraband between the official ports of entry. My authority to perform this mission is articulated in the Immigration and Nationality Act, sections 235 and 287, and Title 8 U.S.C. Section 1357. These bodies of law relate to, among other things, a Border Patrol Agents authority to interrogate any alien or person believed to be an alien, and to make an arrest of any alien who is entering or attempting to enter the United States in violation of the immigration laws. To enforce these laws, I have received training at the Federal Law Enforcement Training Center in Artesia, New Mexico in Law, Operations, Firearms, Driving Techniques, and Physical Techniques. This affidavit is based in part on information provided to me by others and from law enforcement and immigration databases. It does not set forth all of my knowledge about the investigation.

2. I submit this affidavit in support of a criminal complaint charging defendant Raul MORENO HERNANDEZ with violating 8 U.S.C. § 1325(a)(1), which prohibits any alien, that is, any person who is not a citizen or national of the United States, from entering or attempting to enter the United States "at any time and place other than as designated by immigration officers."

**Probable Cause**

3. On August 15, 2026, at approximately 11:32 p.m., Border Patrol Agents (BPAs) assigned to the Burke Border Patrol Station (BKB) were advised by Swanton Sector KAD-640 Radio Dispatch that the Royal Canadian Mounted Police (RCMP) had reported four possible subjects traveling southbound in the vicinity of Fort Covington, New York. In response, BPAs established surveillance along known ingress and egress routes to monitor for vehicles potentially entering the area to pick up the subjects. At approximately 11:36 p.m., BPAs,

utilizing electronic surveillance equipment, detected a black Subaru Outback bearing New Jersey registration R66WYR traveling westbound on New York State Route 122 in Constable, New York.

4. An agent operating an unmarked service unit had earlier observed the Subaru on NY-SR 11 in Burke, New York, and was already following it westbound. The agent continued to follow the Subaru as it turned westbound onto NY-SR 122. The vehicle then turned northbound onto NY-SR 37 and continued into Fort Covington, New York, where it stopped at The Great View Motel, a location historically used for illicit activities. Less than five minutes later, the Subaru departed the motel and traveled southbound on NY-SR 37. The agent continued to follow the Subaru as it turned eastbound onto NY-SR 122.

5. Agents in marked Border Patrol vehicles, positioned in the Town of Constable, observed the Subaru abruptly apply its brakes upon noticing the agents, slowing almost to a complete stop. The occupants appeared nervous and turned away, avoiding eye contact with the agents. The driver also had a visibly stiff, white-knuckle grip on the steering wheel. The Subaru then slowly continued eastbound as agents pulled behind it in their marked service units.

6. Based on the totality of the circumstances, including the recent RCMP report of four possible southbound subjects in the Fort Covington area, the Subaru's New Jersey registration and travel along historically known illicit activity ingress and egress routes, the late hour, its brief stop of less than five minutes at The Great View Motel, and the occupants' behavior upon encountering agents, including the vehicle abruptly braking to nearly a complete stop, the occupants turning away and avoiding eye contact, and the driver's visibly stiff, white-knuckle grip on the steering wheel, agents followed the Subaru for a short distance before activating their emergency overhead equipment to initiate a vehicle stop. Upon activation of the emergency equipment, the Subaru applied its brakes but continued traveling eastbound for approximately one-quarter of a mile before yielding. As agents approached the stopped vehicle, all three occupants were observed moving erratically and reaching around inside the vehicle.

7. Once agents were able to approach the vehicle, they identified themselves as United States Border Patrol Agents and asked the driver, later identified as D.C.L., his country of citizenship. D.C.L. responded that he was from Venezuela and further stated that all occupants of the vehicle were from Venezuela. During questioning, D.C.L. repeatedly attempted to answer questions on behalf of the other two occupants and had to be instructed to remain silent while agents questioned them individually.

8. When each occupant was asked his purpose for being in the area, none provided a clear answer, and the occupants repeatedly looked toward D.C.L. before responding. Agents then asked each occupant whether he possessed immigration documentation permitting him to legally enter, remain in, or pass through the United States. All three occupants claimed to have immigration documentation but were unable to produce any documentation at that time. D.C.L. and the front-seat passenger, later identified as J.C.L., stated that their immigration documents were "in process." The rear-seat passenger, later identified as Raul MORENO HERNANDEZ, stated that he had a visa but that it was at his residence.

9. All three subjects were subsequently detained and transported to the Burke Border Patrol Station (BKB) for biometric identification and immigration record checks. Once back at the station, it was discovered that MORENO HERNANDEZ, who kept claiming he was a Venezuelan national, was actually a Mexican national illegally present in the United States.

10. Interviews of the subjects were conducted. During post-*Miranda* interviews, MORENO HERNANDEZ stated he met D.C.L. and J.C.L. on Facebook, was picked up at a motel near the border, that he was going to be transported to New York City, and he was going to pay $800.00 USD for the ride. During post-*Miranda* interviews, J.C.L. stated he and his brother, D.C.L., were contacted by a friend in Valenzuela to pick up an individual (MORENO HERNANDEZ) at the border and take him to New York City. J.C.L. admitted to knowing MORENO HERNANDEZ was an illegal alien. During post-*Miranda* interviews, D.C.L. admitted to being contacted by a friend in Valenzuela who requested D.C.L. to pick up an individual (MORENO HERNANDEZ) at the border and transport him to New York City. D.C.L. admitted to knowing MORENO

HERNANDEZ was an illegal alien and he was going to be paid $600.00 to $800.00 USD for the ride. D.C.L. admitted to knowing transporting MORENO HERNANDEZ was wrong and claimed he told his brother, J.C.L., he couldn't pick the guy up from the border because he was under the legal process with immigration and didn't want to get in trouble.

**Conclusion**

11. Based on the foregoing, I respectfully request the Court issue the proposed complaint charging the defendant with improper entry by an alien, in violation of 8 U.S.C. § 1325(a)(1).

Amanda L. Harvey 8/17/2026 3:00pm
Amanda L. Harvey
United States Border Patrol

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date: Aug. 18, 2026

Hon. Gary L. Favro
United States Magistrate Judge